# LEVINE & ASSOCIATES, P.C.
## ATTORNEYS-AT-LAW

15 Barclay Road
Scarsdale, New York 10583
e-mail: ml@LevLaw.org
Fax (914) 725-4778
Telephone (914) 600-4288

November 10, 2020

<u>Via e-mail and ECF</u>

Hon. Robert D. Drain
U.S. Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140

<u>RE: In re: Mark A. Nordlicht (20-22782)
Stadtmauer, et. ano. v. Nordlicht, et. al. (Adv. Pro. No. 20-06489)</u>

Dear Judge Drain:

The undersigned is litigation counsel to Dahlia Kalter, 535 W.E.A. Group LLC, OBH 2308 LLC, Trenor Trust (sued as Gilad Kalter Cook Islands Trust Limited), and Trenor Investment Partners LP (collectively, the "Kalter Defendants"), some of the defendants in the above-referenced Adversary Proceeding. I am in receipt of a copy of Mr. Kritzer's letter to the Court dated November 9, 2020, responding to my prior letter of November 6, 2020. This is in reply to Mr. Kritzer's letter.

Although Mr. Kritzer spends some two full pages asserting hearsay and erroneous assertions that my clients participated in some "conspiracy," apparently with every other member of the Debtor's family, to "conceal evidence,"[1] he spends a total of only one paragraph discussing the only salient issue before the Court at this time, *to wit*, whether Mr. Kritzer's clients have any authority issue non-party subpoenas in this Bankruptcy case. As has been his response (or, rather, lack of response) to prior inquiries regarding that, he claims simply (with no citations of judicial authority whatsoever) that he has such authority pursuant to Fed. R. Civ. P. 45, and that the requirement that there be a "contested" matter is not applicable (i.e., that Fed. R. Bankr. P. 9016 is inapplicable here). He is completely incorrect as a matter of law for the following reasons.

*First*, the Stadtmauers had no legal basis or authority to issue the seven non-party Subpoenas (all but three of which have now been withdrawn by them), since they were not issued pursuant to either Rule 2004, an adversary proceeding or a contested matter. *See, In re Rochester Drug Cooperative, Inc.*, 2020 WL 5525798 * 2, 2020 Bankr. LEXIS 2397 (Bankr. W.D.N.Y. Sept. 11,

---

[1] That false allegation is addressed briefly below.

2020); *accord, In re Murray*, 2020 WL 6019638 * 1, 2020 WL 6019638 (Bankr. E.D. Mich. Oct. 2, 2020).

In the *Rochester Drug Cooperative* case, certain class action claimants issued subpoenas *duces tecum* to certain insurance companies (non-debtor third parties), demanding the production of documents. The insurance companies opposed the subsequent motion to compel production, asserting, *inter alia*, that "(1) the subpoenas were issued without authority because they do not relate to a contested matter; [and] (2) the Class Claimants did not seek permission to conduct an examination under Rule 2004 FRBP." (2020 Bankr LEXIS 2397, at *4). Judge Warren made short-shrift of the issue, as follows: "The question presented is whether a creditor has the right to issue a subpoena to a nondebtor third-party, under Rule 45 FRCP and Rule 9016 FRBP, where the creditor simply files a Proof of Claim, but neither requests leave to conduct an examination under Rule 2004 nor is party to an adversary proceeding or party to a contested matter being litigated. The answer is no." The Court, citing *In re Patel*, 2017 Bankr. LEXIS 216, at *5-6 (Bankr. N.D. Ga. Jan. 26, 2017), explained: "Here, because no adversary proceeding or litigated contested matter was pending, and no order authorizing an examination of the Insurers was granted by this Court under Rule 2004, the subpoenas issued by the Class Claimants were improper and invalid."

In the *Patel* case, Judge Craig established the exact proposition set forth in my prior letter to the Court, and which Mr. Kritzer derides in his letter. After quashing multiple subpoenas issued by a creditor, the Court stated as follows on the creditor's motion to reargue (citations omitted):

> Movant's sole basis for seeking reconsideration is its contention that the Court's quashing of the Sixteen Subpoenas resulted from a manifest error of law. Movant asserts that the Court misinterpreted Rule 9016 and failed to follow controlling precedent that establishes the permissibility of Movant's issuance of the Sixteen Subpoenas outside of a related adversary proceeding or contested matter and without an order authorizing a Rule 2004 examination.
>
> * * * * *
>
> The Court based its ruling on the plain language of Federal Rule 45 and Rules 9002(1), 9016, and 2004. Rule 9016 provides that Federal Rule 45 applies in "cases under the Code." Federal Rule 45, in turn, permits a "party" to obtain a subpoena commanding the production of documents. Federal Rule 45(a)(2) requires that every subpoena must "issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). Under Federal Rule 45(a)(2), therefore, there must be an "action" pending in order for a subpoena to be issued.
>
> Rule 9002 provides that certain words used in the Federal Rules have specific meanings when a Federal Rule is made applicable to "cases under the Code," unless that meaning "is inconsistent with the context." Fed. R. Bankr. P. 9002. Relevant to this issue, Rule 9002(1) defines the word "action" to mean "an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an

order for relief or to determine any other contested matter." Fed. R. Bankr. P. 9002(1).

Thus, when reading Federal Rule 45 in a bankruptcy case, the Court substitutes "adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter" for the word "action." Accordingly, a subpoena must issue from the court where the adversary proceeding, contested petition, or proceedings to vacate an order for relief or to determine any other contested matter is pending.

In the matter at bar, the subpoenas at issue were *not* issued in the adversary proceeding and, had they been, they would have been without authority in any event because the Trustee now owns the claims asserted therein. The situation here mirrors the *Rochester Drug Cooperative* and *Patel* cases in the salient facts. Indeed, the very argument made by the Stadtmauers here (that Bankruptcy Rule "9006 does not limit the application of Fed. R. Civ. P. 45" [Kritzer letter, p. 3]) has been resoundingly rejected by those decisions.[2] Here, the Stadtmauers tacitly concede (and Mr. Kritzer has acknowledged the same in his letter) that the Subpoenas were *not* issued pursuant to either Rule 2004, an adversary proceeding or a contested matter. Instead, they inexplicably and frivolously argue (contrary to the statutory language and virtually all applicable case law)

---

[2] Indeed, in similar circumstances (i.e., where subpoenas were issued by a creditor without authority), at least one Court has *sua sponte* awarded sanctions against the issuing party. In *Polo Bldg. Group, Inc. v Rakita (In re Shubov)*, 253 BR 540, 547 [BAP 9th Cir 2000]), the Ninth Circuit observed (citations omitted) that the subject subpoenas "were not linked to any specific request for discovery under the Federal Rules of Civil Procedure that apply in bankruptcy. E.g. Fed. R. Civ. P. 26-36, incorporated by Fed. R. Bankr. P. 7026-36 & 9014. Nor had the court authorized 'Rule 2004' bankruptcy discovery." 253 BR at 544. The Court then held (citations omitted, paragraphs combined) that:

> Smith issued the subpoena on his own authority under Civil Rule 45, which applies in bankruptcy per Bankruptcy Rule 9016. Since 1991, an attorney has been permitted to issue and sign a subpoena on behalf of a court in which the attorney is authorized to practice. Abuse of this liberal authority is constrained by Civil Rule 45(c), which subjects attorneys to a 'sword of Damocles' when they overreach. The attorney or party responsible for issuance and service of a subpoena has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena … When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1). It is apparent that appellants breached their duty to avoid undue burden or expense. The subpoena should never have issued. Nobody should have been required to read it or to do anything else in connection with it.

253 BR at 547. As a result, the Ninth Circuit affirmed the Bankruptcy Court's *sua sponte* award of sanctions against the creditor that issued the subpoenas.

that the "contested matter requirement" does not apply. Their argument is unavailing and the Subpoenas they caused to be issued were clearly unauthorized and improper.

*Secondly*, the Stadtmauers, obviously realizing that there was no authority to issue the Subpoenas to begin with, now argue (again, with no citation of law) that their unauthorized actions in doing so are purportedly "moot" because "Mr. Nordlicht initiated a contested matter with the Stadtmauers by objecting to their motion to extend the time to" object to discharge or dischargeability [Kritzer letter, p. 3]. However, the Stadtmauers issued the Subpoenas on October 28 and 30, 2020, *prior* to the filing of the Debtor's Objection on November 3, 2020, and were therefore void *ab initio*. Moreover, even if the Stadtmauers' Subpoenas were not void *ab initio* (which they were) and could be retroactively validated by a subsequent contested proceeding (which they cannot), the Subpoenas would still be defective, or at the very least overbroad, since they seek discovery relating to the adversary proceeding or as to fraudulent transfers which only the Chapter 7 Trustee can pursue. *See, In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2020). Finally, to the extent that the Stadtmauers can seek *any* discovery related to the Debtor's Objection to the Stadtmauers' Motion to Extend Time to Object to Discharge, it necessarily must be limited to the factors relevant to that specific motion, i.e., (a) whether the creditor has received sufficient notice of the deadline and the information to file an objection; (b) the complexity of the case, (c) whether the creditor exercised diligence; (d) whether the Debtor refused in bad faith to cooperate with the creditor; and (e) the possibility that proceedings pending in another forum will result in collateral estoppel on the relevant issues. *See, In re Robinson*, 2013 WL 3993741 * 2, 2013 Bankr. LEXIS 3267 (Bankr. S.D.N.Y. Aug. 2, 2013), aff'd, *Chua v. Robinson*, 2015 WL 3833542 * 1, 2015 U.S. Dist. LEXIS 80827 (S.D.N.Y. June 18, 2015).

*Third*, the Stadtmauers argument (again, advanced with no citation of law) that the Kalter Defendants purportedly have no "standing" to move to quash the subject Subpoenas because they "admit they have no privacy interest in the records subject to the Subpoenas" is completely misplaced and contrary to existing law. While it is true that a depositor cannot object based upon confidentiality of bank records, objection and still be made on other grounds, e.g., that the person issuing the subpoena did not have any authority to do so, or that the subject subpoena was overbroad, etc. Indeed, that issue was directly addressed in *In re Glitnir Banki HF*, 2011 WL 3652764 * 5, 2011 Bankr. LEXIS 3296 (Bankr. S.D.N.Y. Aug. 19, 2011), where a foreign representative of a debtor in recognized foreign insolvency proceedings asserted that certain individuals controlled the debtor through companies which owned shares in the debtor and were involved in a scheme to loot the debtor through transactions with third parties in which the individuals held financial interests. The representative sought, through subpoenas, information from banks and an entity from which the individuals purchased shares in cooperative apartments concerning the individuals' personal financial transactions and accounts and their property interests in the apartments. The individuals moved to quash those subpoenas. The bankruptcy court granted that motion with regard to the personal financial information of the individuals, holding:

> The Foreign Representative contends that the Movants lack standing to object to the third-party subpoenas ... The Movants have not asserted a privilege in the documents or information sought pursuant to the subpoenas. Nevertheless, the court may "quash, modify, or condition a subpoena to protect the person subject to *or affected by* the subpoena from unnecessary or unduly harmful disclosures of confidential information.' FED. R. CIV. P. 45 advisory committee's note (1991) (emphasis added). 'Accordingly, courts have fond that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." Thus, the Movants have standing to oppose the subpoenas, at least to the extent that they are directed at their personal financial information.

*See*, also, *Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL), 2007 U.S. Dist. LEXIS 5068, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 24, 2007) [*17] (Fox, M.J.) (collecting cases) ["individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"]; *accord Kenney, Becker LLP v. Kenney*, No. 06 Civ. 2975 (JSR), 2008 U.S. Dist. LEXIS 19795, 2008 WL 681452, at *2 n.1 (S.D.N.Y. Mar. 10, 2008); *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 U.S. Dist. LEXIS 4277, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008); *Griffith v. United States*, No. Part I M8-85, 2007 U.S. Dist. LEXIS 36672, 2007 WL 1222586, at *1 (S.D.N.Y. Apr. 24, 2007).

The Kalter Defendants, whose personal financial records were the direct target of the Subpoenas at issue here, clearly have standing to move to quash the same and the Stadtmauers' contention to the contrary is, at best, frivolous.[3]

***Fourth***, I address very briefly Mr. Kritzer's continued allegations of some "asset hiding" or other "improper conduct" on the part of my client. From the time that the Adversary Proceeding was commenced in the State Court, Mr. Kritzer has taken snippets of entirely appropriate and legal conduct and attempted to convert it to (or at least imply that it was) somehow improper conduct or evidenced some secret stash of assets being held by the Debtor. While those issues are no

---

[3] The Stadtmauers' position that they were not required to give to Ms. Kalter and her counsel Rule 45 notice of their Subpoenas seeking production of their personal financial records is similarly absurd. We will not, however, devote any time to that issue at this point, and leave to the Court the determination of whether the notice requirement of Rule 45 means that notice need only be give to a Debtor and not to a defendant in an existing adversary proceeding, who has appeared by counsel, where the records sought are those of that defendant.

longer his to assert,[4] I will address his most recent assertion briefly here so that the Court gets a flavor for his convoluted reasoning and erroneous conclusions. In his letter to the Court, Mr. Kritzer points to transactions by an entity called 16th Avenue Associates an asserts that the same evidence that the entity is under the "control" of the Debtor. That is absolutely false, and the documentary evidence establishes the following. The late Jules Nordlicht (Mark Nordlicht's father) was extremely wealthy, having owned and sold five seats on the NY Mercantile Exchange, the largest commodity futures exchange in the world. When Mr. Nordlicht unfortunately passed away on August 3, 2018, his fortune was left largely to his wife, Barbara Nordlicht. Slightly less than three months later, and as an estate planning tool recommended by an independent estate attorney, Barbara Nordlicht agreed to loan to her children, Ora Gichtin and Kenneth Nordlicht, and her daughter-in-law, Dahlia Kalter, periodic sums of money for the purpose of investments by them. The agreement was that the recipients would pay back the principal with interest to Barbara Nordlicht by a date certain and retain for themselves any profits that were made on the investment of the funds (in excess of the agreed upon interest). That structure was intended to

---

[4] In *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2020), the Court basically denied a creditor's right to Rule 2004 discovery about third parties who may be liable on its claim of avoidable transfers, with the Court noting that the Trustee had the *exclusive* right to pursue such claims. The Court stated:

> Here, both motions (for Rule 2004 discovery), although couched in the rule's language of matters affecting the administration of the estate and investigating the conduct of the debtor, exceed those boundaries. Remember, these are chapter 7 cases and it is the trustee's duty to investigate the debtor's affairs and the rights of the bankruptcy estate. To the extent the movants seek to discover avoidable transfers, they are intruding upon the trustee's duties and taking these duties upon themselves. While the court may understand their curiosity, there is nothing the movants could do with that information once they got it. They could not act upon it, or seek to recover any such transfers; the trustee has the exclusive right to do so. *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (If a third party tries to prosecute a cause of action belonging to the trustee, the action should be dismissed.). So, in that sense, their examination can serve no real purpose. While movants may genuinely want to help the trustee, should the trustee desire that assistance, they must do so directly, acting for, at the behest of, and in the name of the trustee, and not indirectly, in a manner that treats the trustee as simply an incidental beneficiary of an endeavor actually undertaken for someone else.

Here, the Stadtmauers are issuing Subpoenas to allegedly uncover purported fraudulent transfers, but by doing so they are basically seeking to improperly usurp the exclusive role of the Trustee. Moreover, the Trustee has already entered into a settlement concerning such claims (which is subject to this Court's approval) and has declined the opportunity to obtain the "assistance" of the Stadtmauers or their counsel in that endeavor by withdrawing the prior motion to retain that law firm.

avoid probate of the anticipated profits from the investments and render those profits immune from estate taxes. It was (and remains) a perfectly lawful and recognized estate planning technique.

Ora Gichtin, Kenneth Nordlicht and Dahlia Kalter each executed grid promissory notes in favor of Barbara Nordlicht and formed 16th Avenue Associates LLC (a Delaware entity) on October 25, 2018 to use the vehicle for investments of Barbara Nordlicht's funds. The notes were prepared by the estate attorney and duly executed by the individuals. Between November 14, 2018 and October 2, 2019, either individually or as Executrix of the Estate of Jules Nordlicht, Barbara Nordlicht loaned an aggregate of $21,926,000.00 to 16th Avenue Associates LLC. *Not one dime of 16th Avenue Associates LLC's funds came from Mark Nordlicht or any entity that he controlled or was affiliated with.* All receipts by 16th Avenue Associates from Barbara Nordlicht can be verified from bank accounts of the Estate and/or Barbara Nordlicht, on the one hand, and the 16th Avenue bank accounts on the receiving end. The funds were, and continuing to be, used for various investments.[5] In June of 2020, the note was refinanced to a lower interest rate and all aggregate interest then due ($1,452,319.34) was paid up to date *to Barbara Nordlicht* at that point. The refinance papers were prepared by the estate attorney, provided for interest on the remaining principal amount, and executed by all necessary parties. As set forth above, the documentary evidence establishes conclusively that all of the money deposited into the 16th Avenue accounts was from Barbara Nordlicht (either individually or from her husband's estate), and that none of those funds came from Mark Nordlicht.

In short, the Stadtmauers' allegations of some clandestine plan to allegedly hide assets of the Debtor is pure hogwash.

Thank you for your attention.

Respectfully,

MICHAEL LEVINE

cc. All counsel (via email)

---

[5] It is true that Mark Nordlicht, whose field of expertise is investing, manages (at his wife's and mother's request) the investment funds, however he has never given any funds to his mother for subsequent loan to 16th Avenue Associates, he has never contributed any money to 16th Avenue Associates LLC, and (except for $15,000 in funds used to pay his attorney's retainer) he has never received one penny in distributions from 16th Avenue Associates, LLC, nor is he entitled to receive any such distributions. To the extent that a very small sum was used to pay part of Mr. Nordlicht's attorney's fees, that is a decision entirely within the discretion of his mother and/or the owners of 16th Avenue Associates. But the fact that the Debtor's mother or relatives wish to assist him in his time of need establishes nothing other than that they are part of his loving family. Period.