UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
In re:                                                         :    Chapter 7
                                                               :
MARK A. NORDLICHT,                                             :    Case No. 20-22782 (DSJ)
                                                               :
              Debtor.                                          :
                                                               :
-------------------------------------------------------------- X

# MEMORANDUM OF DECISION GRANTING THE TRUSTEE'S AND BARBARA NORDLICHT'S MOTIONS TO RECLASSIFY CLAIM 3-1

**APPEARANCES:**

BACKENROTH FRANKEL & KRINSKY LLP
*Counsel for the Debtor*
488 Madison Ave., 23rd Floor
New York, NY 10022
 By:    Mark A. Frankel
        Scott Krinsky

LAMONICA HERBST & MANISCALCO LLP
*Counsel for Mark S. Tulis, not individually but in his capacity as Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
 By:    Melanie A. FitzGerald
        Salvatore LaMonica
        Lon J. Seidman

LAW OFFICE OF MARK S. TULIS
*Counsel for Mark S. Tulis, not individually but in his capacity as Chapter 7 Trustee*
21 Gray Rock Lane
Chappaqua, NY 10514
 By:    Mark S. Tulis

LEVINE & ASSOCIATES, P.C.
*Counsel for Dahlia Kalter, 535 W.E.A. Group LLC, OBH 2308 LLC, Gilad Kalter Cook Islands Trust Limited and Trenor Investment Partners LP; Co-counsel for Interested Party Barbara Nordlicht*
15 Barclay Road
Scarsdale, NY 10583
 By:    Michael Levine

STEPTOE LLP
*Counsel for Richard and Marisa Stadtmauer*
1114 Avenue of the Americas
New York, NY 10022
By:   Nathaniel Kritzer

DAVIDOFF HUTCHER & CITRON LLP
*Counsel for Richard and Marisa Stadtmauer*
120 Bloomindale Road, Suite 100
White Plains, NY 10605
By:   Jonathan S. Pasternak

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Mark S. Tulis is the Chapter 7 trustee (the "Trustee") in the bankruptcy case of Debtor Mark A. Nordlicht. The matter before the Court is the Trustee's motion (the "Reclassification Motion") seeking entry of an order, pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 501 and 502(a) of title 11 of the United States Code ("Bankruptcy Code"),[1] to reclassify claim number 3-1 ("Claim 3-1" or the "Claim") filed by Richard and Marisa Stadtmauer (the "Stadtmauers" or "Claimants") to a general unsecured claim [ECF No. 137]. Barbara Nordlicht, an interested non-debtor party and the Debtor's mother, filed a motion for entry of an order (the "Nordlicht Motion," and together with the Reclassification Motion, the "Motions") seeking substantially the same relief as the Trustee's Reclassification Motion [ECF No. 140]. The Stadtmauers filed an objection (the "Stadtmauer Obj.") to the Motions [ECF No. 143]. The Trustee and Barbara Nordlicht thereafter filed their replies [ECF Nos. 146 & 147].

For the reasons explained below, the Court grants the Motions.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

**BACKGROUND**

This Decision discusses only case background that is immediately pertinent to the Motions it resolves. In brief, on June 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* ECF No. 1. Mark S. Tulis was thereafter appointed as the Trustee and he continues to serve in that capacity. *See* ECF No. 10.

On January 10, 2020, and thus before the Petition Date, the Stadtmauers obtained a final arbitration award in the amount of $14,896,316.16 (excluding interest) based on the Debtor's personal guaranty of promissory notes. *See Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 98 (2d Cir. 2024). The Stadtmauers commenced an action in the Southern District of New York to confirm the award but later voluntarily dismissed that action without prejudice. *Stadtmauer*, 115 F.4th at 100 n.2.

Also before the Petition Date, on February 5, 2020, the Stadtmauers commenced a state court action in Westchester County (the "State Court Action"), seeking not only to collect the final arbitration award amount but also relief on the following New York law liability theories: "(1) actual fraudulent conveyance, (2) constructive fraudulent conveyance, (3) 'reverse veil piercing' against the business entities named as defendants . . . and (4) as interim relief, requests for *ex parte* prejudgment orders of attachment" (the "Removed Claims"). *Id.* at 99. Among other things, the Stadtmauers alleged a scheme orchestrated by Mr. Nordlicht and his family to defraud their creditors and make Mr. Nordlicht "judgment proof." *See id.* The presiding state court granted the Stadtmauers' *ex parte* motion for a prejudgment order of attachment against certain real property interests allegedly owned by the Debtor but held in the name of his wife, Dahlia Kalter, located at 535 West End Avenue, Unit 15, New York, NY ("535 WEA") and 245 Trenor Drive, New Rochelle, NY ("245 Trenor Drive"). On February 14 and 18 respectively, the New

3

York County Sheriff filed a notice of attachment over 535 WEA with the New York County Clerk and the Westchester County Sheriff filed a notice of attachment over 245 Trenor Drive with the Westchester County Clerk. *See* Adv. No. 20-06489-RDD, ECF Doc 13-5; Stadtmauer Obj. at 8 n.5. The record does not show that either sheriff levied any property of the Debtor before the Petition Date. The state court confirmed the attachment order against both properties on May 22, 2020. *Stadtmauer*, 115 F.4th at 99.

After the Petition Date of June 29, 2020, the State Court Action was automatically stayed pursuant to Bankruptcy Code Section 362(a), removed to the district court pursuant to 28 U.S.C. § 1452(a), and referred to the bankruptcy court as Adversary Proceeding No. 20-06489-RDD on July 31, 2020. *Id.* at 100. On October 23, 2020, the Claimants filed a proof of claim designated as Claim No. 3-1, asserting a secured claim premised on the sheriff's levy pursuant to the order of attachment for the final arbitration award plus unsecured interest in the amount of $563,533.66. *Id.* at 100 n.3. The Stadtmauers maintained that the sheriff's levy "endowed them with 'judicial liens' on the 535 W.E.A. and 245 Trenor Drive properties . . . ." *Id.* at 100.

Concurrently, acting pursuant to his statutory authority under Section 544, the so-called "strong arm" provision, *see* 11 U.S.C. § 544, the Chapter 7 Trustee negotiated a global resolution of claims asserted by and against multiple parties, including the Removed Claims raised in the State Court Action by the Stadtmauers, to settle all claims that could have been asserted on behalf of the Debtor's estate and moved to present the settlement to the Court (Drain, J.). *Id.* After a bidding war to purchase and settle the Removed Claims, the Court in the sale hearing on April 23, 2021 overruled the Stadtmauers' contention that the Trustee lacked authority to dispose of their allegedly perfected judicial liens and instead found that the liens were subject to bona fide dispute and thus eligible for disposition "free and clear" under 11 U.S.C. §§ 363(f)(4) and

4

363(b). *See* Hr. Tr., 53:12-21, Apr. 23, 2021 [Adv. No. 20-06489-RDD, ECF No. 33]. Specifically, the offer approved by the Court as being in the estate's best interest (the "April 22 Offer") comprised of, in exchange for the purchase of the Removed Claims, a (1) $2.5 million cash payment from Debtor's mother Barbara Nordlicht to the estate, (2) indemnification through a letter of credit for lien litigation premised on a conditional second $2.5 million payment from Barbara Nordlicht to the estate if the Stadtmauers succeeded on their lien claims, and (3) reimbursement of the estate's costs arising from defending against the Stadtmauers' claims related to their asserted liens. *See Stadtmauer v. Nordlicht (In re Nordlicht)*, No. 21-CV-5990 (KMK), 2022 WL 1591788, at *3 (S.D.N.Y. May 19, 2022) (Karas, J.); Hr. Tr., 9:23-10:14, Apr. 23, 2021. The Court entered the sale order on June 2, 2021. *See* Adv. No. 20-06489-RDD, ECF No. 35 (the "Sale Order").

The Stadtmauers appealed. On review, the district court affirmed, holding (i) that the estate owned the relevant fraudulent conveyance and alter ego claims, including any attachments; (ii) that the sale did not contravene the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017), because the secured status of the Stadtmauers' claims was in legitimate dispute; and (iii) that the bankruptcy court did not abuse its discretion in applying the settlement standards of *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007), or in concluding that the April 22 Offer was superior. *See generally Stadtmauer*, 2022 WL 1591788.

The Second Circuit affirmed, adopting substantially the reasoning of the district court. *See Stadtmauer*, 115 F.4th at 100–03. The Second Circuit left open the issue of the validity and nature of the Stadtmauers' alleged secured claims for determination "at a later stage in the bankruptcy litigation." *Id.* at 119 (citing *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 467

5

(2017)). The Circuit did observe, however, that "[u]ntil they have established in the underlying bankruptcy proceedings that their liens are valid, their claims are not secured." *Id.* at 118.

**JURISDICTION**

This Court has jurisdiction over this bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). The adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

**LEGAL STANDARDS**

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Absent an objection, a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See In re Metex Mfg. Corp.*, 510 B.R. 735, 740 (Bankr. S.D.N.Y. 2014) (citing Fed. R. Bankr. P. 3001(f)). The validity and amount of the Claim is not at issue here. Rather, the Trustee challenges the secured status of the Claim and seeks to have it reclassified as a general unsecured claim.

**DISCUSSION**

    **A. A Finding That the Removed Claims Are Property of the Estate Is Insufficient to Make a Determination That the Claim Should Be Reclassified**

The Second Circuit agreed with this Court (Drain, J.) that the Stadtmauers, through their purported liens, "asserted an interest in property of the estate," *i.e.*, the Removed Claims consisting of the fraudulent conveyance and alter-ego claims. *Stadtmauer*, 115 F.4th at 112 n.16.

6

Such property was eligible to be sold by the Trustee to settle the Removed Claims. Bankruptcy Code Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code Section 541(a) provides that property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," "wherever [the property is] located and by whomever [it is] held." 11 U.S.C. § 541(a)(1). Bankruptcy law determines whether an interest is property of the estate. *Off. Comm. of Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 569 (2d Cir. 1991). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [Section] 541," and is therefore property of the estate. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal quotations removed).

The Second Circuit agreed with the district court's reasoning that the Removed Claims, including fraudulent conveyance and alter ego theories, constituted general claims, *i.e.*, general to all creditors, belonging to the estate because they are "quintessentially derivative" of harm done to the Debtor's estate, namely that the 535 WEA and 245 Trenor Drive properties were wrongfully removed from the estate. *See Stadtmauer*, 115 F.4th at 105-11 (citing *Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 855 F.3d 84, 99-106 (2d Cir. 2017)). Moreover, the Stadtmauers themselves acknowledge that the district court determined that the Removed Claims and attachments became property of the Debtor's estate upon the filing of the petition. *See* Stadtmauer Obj. at 17; Hr. Tr., 16:11-14, June 25, 2025 [ECF No. 151]; *Stadtmauer*, 2022 WL 1591788, at *7; *see also Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 70 (2d Cir. 2013) ("[W]hen a creditor seeks relief against third parties that

7

pushed the debtor into bankruptcy, the creditor is asserting a derivative claim that arises from harm done to the estate."); *Helicon Partners, LLC v. Kim's Provision Co., Inc.*, No. 12-CV-1602, 2013 WL 1881744, at *9 (Bankr. S.D.N.Y. 2013) (explaining that "the fraudulent conveyance claims" and the "claims alleging that [a third party] is a fraudulent transferee or alter ego of the [d]ebtor," which had led to a prejudgment attachment, "must be pressed by the [t]rustee as the estate representative").

However, the determination that the Removed Claims and attachments became property of the estate and thus eligible for settlement by the Trustee does not alone answer the question whether or not the Stadtmauers' alleged liens give the Claim secured status. After all, the Second Circuit merely held on alternate grounds from the district court's ruling that the liens in question were the subject of a bona fide dispute and thus were eligible to be sold by the Trustee as property of the estate pursuant to Section 363(b). *See Stadtmauer*, 115 F.4th at 111-12 (citing 11 U.S.C. § 363(b)(1) ("The [bankruptcy] trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."); 11 U.S.C. § 363(f)(4) ("The trustee may sell property [of the estate] under [Section 363](b) . . . *free and clear of any interest in such property* of an entity other than the estate, only if . . . such interest is in bona fide dispute.") (emphasis added)). Crucially, the Second Circuit observed that the Court did not hold or reason that the liens themselves are "property of the estate" when it overruled the Stadtmauers and entered the Sale Order. *See Stadtmauer*, 115 F.4th at 112 n.16; 11 U.S.C. § 101(37) (defining lien to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation"). A finding that the Stadtmauers' purported liens grant them secured status would be significant because the Stadtmauers would then be entitled to adequate protection to compensate them for the value of their collateral. *See* 11 U.S.C. § 361.

8

Instead, to make the determination that the Stadtmauers' Claim is unsecured, the Court must inquire, for reasons discussed *infra*, whether the Stadtmauers perfected their liens under New York law.

### B. The Stadtmauers' Claim Is Reclassified as Unsecured

The Stadtmauers argue that their notices of attachment and the sheriffs' levies in New York and Westchester counties were sufficient to confer secured status in the form of liens on the Debtor's real and personal property, and that, as a result, their Claim is secured. Stadtmauer Obj. at 17-18. The Second Circuit opened the door to this argument: "The Stadtmauers may assert, in future stages of the bankruptcy proceeding, that their claims are secured by virtue of their attachment orders." *Stadtmauer*, 115 F.4th at 121. As the Court now explains below, the Stadtmauers failed to perfect their liens, and as a result their Claim is not secured and must be reclassified from secured to unsecured.

As the Second Circuit noted, *see id.* at 99 n.1, "[a]ttachment is a provisional remedy [under New York law] designed to secure a debt by preliminary levy upon the property of the debtor to conserve it for eventual execution." *Hume v. 1 Prospect Park ALF, LLC*, 137 A.D.3d 1080, 1081, 28 N.Y.S.3d 125 (N.Y. App. Div. 2016); *see also Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 5 Misc. 3d 285, 300, 783 N.Y.S.2d 758, 773 (N.Y. Sup. Ct. 2004) ("Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve the property for eventual execution.") (citing *Michaels Elec. Supply Corp. v. Trott Elec. Inc.*, 647 N.Y.S.2d 839, 840 (N.Y. App. Div. 1996)). An attachment "does not transfer the property to the creditor," but "simply keeps the debtor away from his property." *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 538, 911 N.E.2d 825, 828 (N.Y. 2009). The attached property is used to satisfy "the creditor's judgment *if* the creditor should prevail in

9

court." *Id.* (emphasis added). But "[a]n order of attachment, standing alone, gives no greater rights to the attaching creditor. . . ." *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 620 (Bankr. S.D.N.Y. 2010). "Under New York law, an attaching creditor must deliver the order of attachment to the sheriff in order to obtain priority in specific property or a debt." *In re IDI Constr. Co., Inc.*, 345 B.R. 60, 68 (Bankr. S.D.N.Y. 2006) (citing CPLR 6203). A sheriff's levy of property of the judgment debtor is effectuated by "serving the order of attachment on the garnishee or person in possession of the property" pursuant to CPLR 6214. *Int'l Banking Corp.*, 439 B.R. at 621-22. "If the sheriff seizes the attached property, the lien is perfected against all transferees." *Int'l Banking Corp.*, 439 B.R. at 621. Thus, a sheriff's levy is the key to perfecting an order of attachment.

Orders of attachment do not last indefinitely – the CPLR provides that "[a]n order of attachment is annulled when the action in which it was granted abates or is discontinued, or a judgment entered therein in favor of the plaintiff is fully satisfied, or a judgment is entered therein in favor of the defendant." CPLR 6224. "Because a prejudgment attachment is contingent on the success of the creditor's claims and the entry of judgment in the creditor's favor, a prejudgment attachment depends on the existence of such a claim." *Stadtmauer*, 2022 WL 1591788, at *4; *accord. Int'l Banking Corp.*, 439 B.R. at 621 ("The attachment provisions of the CPLR give the attaching creditor a priority in the distrained property which it can look to in satisfaction of a future judgment . . . [t]he attaching creditor's priority secures the defendant's debt contingent on the entry of judgment in the former's favor."); *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 64 (2d Cir. 1965) ("[T]he attachment lien is contingent and inchoate—merely a lis pendens notice that a right to perfect a lien exists." (quotation marks omitted)); *Int'l Banking Corp.*, 439 B.R. at 621 ("Although the CPLR does not describe the

10

priority [of attachment] as a 'lien,' the description fits."). The district court observed that the Stadtmauers' "attachments on 535 WEA and 245 Trenor Drive were dependent on the existence of the Claims, and contingent on the success of the Claims and an entry of judgment in Appellants' favor . . . ." *Stadtmauer*, 2022 WL 1591788, at *4. But the Second Circuit noted that the Stadtmauers, who served the notices of attachment on the relevant parties on February 18, 2020, failed to take any property into custody by having a sheriff levy property subject to the orders of attachment or commence a special proceeding pursuant to CPLR 6214(d) to compel delivery of such property within 90 days following February 18.[2] *See Stadtmauer*, 115 F.4th at 113. Nor did the Stadtmauers move to extend the 90-day deadline pursuant to CPLR 6214(e), "thus likely rendering their attachments 'void.'" *Stadtmauer*, 115 F.4th at 113; *see also Nat'l Am. Corp. v. Fed. Republic of Nigeria & Cent. Bank of Nigeria*, 1977 U.S. Dist. LEXIS 12316, at *3 (S.D.N.Y. Dec. 19, 1977) ("Failure to comply with [CPLR 6214] results in the voiding of the levy ninety days after service of the order of attachment."). And the Stadtmauers' opposition to the Motions fails to rebut any of these observations.

Because the Stadtmauers failed to take any attached property into possession during the pendency of the orders of attachment, commence a special proceeding pursuant to CPLR 6214(d) within 90 days of the entry of the orders of attachment, or move to extend the orders of attachment within 90 days of the entry of the orders of attachment, their attachments became void by operation of law, for reasons described above and, earlier, by the Second Circuit. Any secured status they ever may have enjoyed was lost when the Stadtmauers failed to perfect their

---

[2] In a letter to the Court dated June 25, 2025 [ECF No. 149], counsel for the Claimants, Jonathan S. Pasternak, claimed that the expiry of the Stadtmauers' attachment was tolled by the New York State Executive Order No. 202.8 and Executive Order No. 202.72, issued by the Governor in response to the COVID-19 pandemic. But the Second Circuit already rejected such arguments as "meritless" and found that the Stadtmauers did not take actions to enforce or extend their liens before February 2, 2021, 90 days after the expiration of these executive orders. *See Stadtmauer*, 115 F.4th at 113-14.

attachment. *See* CPLR 6214. Therefore, the Court reclassifies the Stadtmauers' claim as unsecured.³

### C. The Stadtmauers Are Not Owed Compensation for the "Extinguishment of their Prepetition Liens" Nor Are They Entitled to Replacement Liens

The Stadtmauers assert that it is "patently unfair for their prepetition liens to be stripped from them and their claim be deemed unsecured without any benefit or compensation." Stadtmauer Obj. at 18. They ask the Court to exercise its equitable powers pursuant to Section 105(a) to fashion an appropriate remedy for the Stadtmauers in light of the Debtor's alleged widespread fraudulent conduct. *See id.* at 18-19; 11 U.S.C. § 105(a) (giving bankruptcy courts equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title").

Besides the Stadtmauers' false premise that they have "liens," this sort of request for such consequential equitable relief on the sole asserted authority of Section 105 is disfavored and not appropriate here. "Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92-93 (2d Cir. 2003) (quoting *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988))). "[Section 105(a)] does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *New England Dairies*, 351 F.3d at 92 (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

---

³ The Court therefore need not analyze whether a finding that the claim is secured would adversely impact the Debtor's estate. *See* Stadtmauer Obj. at 22-23.

Section 506(a) defines a "secured claim" as "an allowed claim of a creditor secured by a *lien on property in which the estate has an interest*." 11 U.S.C. § 506(a) (emphasis added). As previously discussed by the Court *supra* § A, the Stadtmauers' orders of attachment expired by operation of law and thereby voided their liens. Despite Stadtmauers' concerns and their perceived status as victims of a serious fraud, the Court is "not at liberty to 'alter the balance struck by the statute'" by contravening the plain language of Section 506(a). *In re Sisk*, 962 F.3d 1133, 1145 (9th Cir. 2020) (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017)). Moreover, the adequate protection provision of Section 361 protects only secured creditors. *See* 11 U.S.C. § 361; *Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y. 1993) ("There is no express statutory requirement that holders of unsecured claims be provided [the] 'adequate protection' of [Section] 361."); *In re Pioneer Com. Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) ("[T]he concepts of adequate protection of an interest in property and the existence of an equity interest in property do not apply to unsecured claims."); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371-72 (1988) (defining the value of an "entity's interest in property" that is entitled to adequate protection in light of the meaning of value of "creditor's interest" in property under Section 506(a)); *In re Millennium Lab Holdings II, LLC*, 242 F. Supp. 3d 322, 331 n.12 (D. Del. 2017) (Courts cannot "create substantive rights that are otherwise unavailable under applicable law.") (citing *Daily Mart Convenience Stores*, 351 F.3d at 92).

Nor are the Stadtmauers entitled to replacement liens, a remedy they also propose in their objection. *See* Stadtmauer Obj. at 19. New York state law and the Bankruptcy Code each provide in some circumstances that when a lien is extinguished or otherwise taken, the affected party receives a replacement lien on other comparable property or is compensated in some other

manner. For example, under applicable New York law, in a sale context, liens attach to the proceeds of any disposition of collateral. *See* N.Y. U.C.C. § 9-315(a)(1) ("(1) a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest . . . ; and (2) a security interest attaches to any identifiable proceeds of collateral."). The attachment of the security interest to the proceeds is automatic. *Id.* § 9-315(a)(2). This is similarly true in the section 363 sale context, where prepetition secured liens necessarily attach to the sale proceeds. *See, e.g.*, *In re Chrysler LLC*, 405 B.R. 84, 103 (Bankr. S.D.N.Y. 2009) (the sale "is not a 'release' of collateral because the lien attaches to the proceeds of the sale, which remain as collateral to secure the loan made by the Lenders.").

Unfortunately for the Stadtmauers, circumstances that would entitle them to a replacement lien are not present here. Rather, as previously explained, the Stadtmauers never perfected their attachment to any of the Debtor's personal property or real property. The Sheriff never levied any property and the Stadtmauers failed to initiate a special proceeding within 90 days as required by CPLR 6214(d). *See In re Nordlicht*, 115 F.4th at 113. They therefore did not have a valid lien or security interest that could trigger entitlement to a replacement lien.

### D.  The Common Fund Doctrine Is Inapplicable

Lastly, the Stadtmauers argue that the prepetition legal fees and costs they incurred in connection with the State Court Action should be compensated pursuant to the equitable "common fund" doctrine. Stadtmauer Obj. at 23. Indeed, they state their prepetition actions "created" the settlement funded by the sale of the Removed Claims and that the settlement fund would not have existed but for their efforts. *Id.* at 24-25.

The "common fund" doctrine provides that "a litigant or lawyer who creates, enhances or restores a common fund for the benefit of himself and others is entitled to recover his reasonable attorneys' fees and expenses from the fund." *In re Waterscape Resort LLC*, No. 11-11593 (SMB), 2013 WL 2285747, at *3 (Bankr. S.D.N.Y. May 23, 2013) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939); *Cent. RR. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 126-27 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532-33 (1881)). "The doctrine is based on principles of unjust enrichment, and requires the beneficiaries of the fund to bear the cost of its creation." *Id.* (citing *Van Gemert*, 444 U.S. at 478; *accord Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970)). "The rule is not limited to recoveries through litigation; a party or its attorney may recover when the common fund results from a settlement." *Id.* (citing *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975)).

As other courts in this Circuit have noted, it is unlikely that the "common fund" doctrine applies where the Bankruptcy Code has provided a scheme for the compensation of administrative expenses, including fees and costs, under Section 503(b). *See In re Bayou Grp., LLC*, 431 B.R. 549, 567 n.20 (Bankr. S.D.N.Y. 2010*)*; *Texaco Cap. Inc. v. Chase Manhattan Bank, N.A. (In re Texaco, Inc.)*, 85 B.R. 934, 937 (Bankr. S.D.N.Y. 1988) (Section 503(b) "is the exclusive vehicle for obtaining reimbursement for attorneys' fees, as an administrative expense, directly from a bankruptcy estate."). Bankruptcy courts lack "the power to grant compensation from an estate other than as expressly provided for by the Code." *Texaco*, 85 B.R. at 937 (citing *In re United Merch. & Mfr., Inc.,* 597 F.2d 348 (2d Cir. 1979)). Moreover, the plain language of Section 503(b)(3)(D) states that it has no application in a Chapter 7 case like this one. [4] As has

---

[4] Section 503(b) provides: [a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including—(3) the actual, necessary expenses, other than compensation and reimbursement specified in

been previously discussed *supra*, the Court cannot contravene the express provisions of the Bankruptcy Code pursuant to its equitable powers or the authority conferred by Section 105. *See Ahlers,* 485 U.S. 197, 206 ("[W]hatever equitable powers remain in the bankruptcy courts [they] must and can only be exercised within the confines of the Bankruptcy Code."). Therefore, the Stadtmauers cannot recover their prepetition fees and costs from the estate under Section 503(b) or the common fund doctrine.

## CONCLUSION

For the reasons stated above, the Court grants the Motions to reclassify Claim 3-1 to a general unsecured claim. The Trustee is directed to submit an order consistent with this Memorandum of Decision. The time to appeal will begin to run upon entry of such an order.

IT IS SO ORDERED.

Dated: New York, New York
August 13, 2025

        *s/ David S. Jones*
        HONORABLE DAVID S. JONES
        UNITED STATES BANKRUPTCY JUDGE

---

paragraph (4) of this subsection, incurred by—(D) a *creditor*, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case *under chapter 9 or 11 of this title*.

11 U.S.C. § 503(b)(3)(D) (emphasis added).